**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

CONNIE NORRIS                                                    CIVIL ACTION

VERSUS                                                                  No. 26-163

MAGNOLIA WATER UTILITIES
OPERATING COMPANY, LLC, ET AL.                   SECTION I

**ORDER AND REASONS**

Before the Court is plaintiff Connie Norris's ("plaintiff") motion[1] for a temporary restraining order ("TRO"). She seeks to enjoin defendants Magnolia Water Utility Operating Company, LLC and Central States Water Resources, Inc. (herein, "Magnolia") from "filing, submitting, receiving, or obtaining approval for any additional water or wastewater system acquisitions in Louisiana while contested rate cases remain pending before" defendant Louisiana Public Service Commission ("LPSC" or the "Commission") (collectively with Magnolia, "defendants").[2] She also seeks to enjoin: LPSC "from issuing or processing letters of non-opposition, approvals, tariff filings, or any regulatory actions expanding Magnolia's footprint" and "all [d]efendants from altering Magnolia's service territory, tariff authority, or customer obligations within [the Eastern District of Louisiana]."[3] Plaintiff also requests that the TRO be converted to a preliminary injunction "after hearing."[4]

---

[1] R. Doc. No. 46.

[2] *Id.* at 1–2.

[3] *Id.* (capitalization altered).

[4] *Id.*

1

Magnolia and LPSC each filed a response in opposition to the motion.[5] Plaintiff filed a reply.[6]

## I.   BACKGROUND

Plaintiff is a resident of St. Tammany Parish, Louisiana, and her claims arise from defendants' provision and regulation of her water utilities.[7] Plaintiff identifies "Magnolia Water/CSWR" as the water provider servicing her area.[8] Her complaint alleges that since becoming a "Magnolia/CSWR customer" approximately five years ago, she has developed "severe medical conditions consistent with exposure to contaminated water."[9] She submits that she has "incurred more than $200,000 in medical expenses related to exposure" to the contaminated water.[10] She also alleges that she has incurred "approximately $10,000 in property damage" due to the contaminated, unsafe water.[11]

The present matter is not the first time that plaintiff has complained of these allegedly failing water systems. She is an intervenor in many proceedings before LPSC, which she identifies as the body that "regulates Magnolia/CSWR's rates and acquisitions."[12] She claims that she, along with other St. Tammany residents, have "warned" LPSC of the "existing water system failures" to no avail.[13] LPSC has

---

[5] R. Doc. Nos. 48, 49.
[6] R. Doc. No. 50.
[7] R. Doc. No. 1.
[8] *Id.* ¶ 5.
[9] *Id.* ¶ 10.
[10] *Id.* ¶ 16.
[11] *Id.* ¶ 12.
[12] *Id.* ¶ 6.
[13] *Id.* ¶¶ 18–22.

allegedly continued to approve "Magnolia/CSWR expansions,"[14] despite warnings from plaintiff and other St. Tammany residents.[15] LPSC has allegedly also "approved additional rate increases despite [the] unresolved" water quality issues.[16] Plaintiff alleges that her water utility bill has increased by 400% since 2021.[17] She further contends that she has been deprived "meaningful" participation in these LPSC proceedings.[18]

Plaintiff raises eight causes of action against Magnolia, LPSC, and the other defendants not targeted by her motion for a TRO.[19] Her complaint seeks declaratory and injunctive relief as well as monetary damages in the form of "refunds and billing corrections," compensatory damages, and "punitive and exemplary damages in an amount not less than $1,000,000,000 . . . due to ongoing, knowing, reckless, and harmful conduct of Magnolia/CSWR and the regulatory failures that allowed the harm to continue."[20]

Plaintiff's motion for a TRO seems to be prompted by Magnolia "submitting a request for Letter of Non-Opposition and a shortened protest period" on May 18, 2026, which plaintiff argues "demonstrat[es] Magnolia's intent to continue expanding during active litigation."[21] The letter is not located on any of the dockets cited by

---

[14] *Id.* ¶¶ 21–22.
[15] *See id.* ¶¶ 18–20.
[16] *Id.* ¶ 14.
[17] *Id.* ¶ 13.
[18] *Id.* ¶ 35.
[19] *See generally* R. Doc. No. 1 ¶¶ 39–73.
[20] *Id.* at 6.
[21] *Id.* at 3.

plaintiff,[22] however, plaintiff attaches a photograph of the first page of the referenced letter to her motion.[23] The letter, directed to LPSC's Executive Secretary Brandon Frey (the "LPSC Secretary"), states that it pertains to "the sale of the water system assets of the Central Park, Forest Glen, Ponderosa Ranches, and Village Guthrie subdivisions currently operated by Parks Waterworks, Inc."[24] The letter also asks the LPSC Secretary to "exercise [his] discretion pursuant to Rule 19 of the Commission's Rules and shorten the period to protest this application from twenty-five (25) to fifteen (15) days."[25]

---

[22] *See id.* at 3, 5. The Court notes that the letter can be found at LPSC Docket No. S-37934.

[23] *See* R. Doc. No. 46-1.

[24] *Id.*

[25] *Id.* Rule 19 of LPSC's Rules of Practices and Procedures states, in relevant part: "The Secretary may publish monthly, or more often if necessary, a notice of applications or other pleadings by which proceedings shall have been instituted before the Louisiana Public Service Commission since the last previous publication of notice. . . . Said notice shall set out the name and address of the applicant or other party filing the same, the docket number, and the name and address of his attorney or other representative, shall contain a concise statement of the action sought in the proceeding *and shall state that every person who desires to appear in opposition must file a notice of protest with the Secretary* **within twenty-five (25) days after the date of publication of said notice, or within such other period of time as might be specified**, with service of a copy of said notice of protest upon the party who instituted the proceeding, and that if no notice of protest shall have been received by the Secretary within said twenty-five (25) day period or other specified period, the proceeding will be processed and determined upon an uncontested docket, provided that the Commission shall have the right, power and duty to inquire into the public interest in any proceeding whether contested or uncontested. The date of mailing of a special notice, or date of mailing of the publication of all published notices, shall be the date after which the time period commences to run. Said Bulletin may, but shall not necessarily, also contain official notice of the dates set for hearing of previously docketed matters, in which event no further notice shall be required. Except in matters involving contempt, a violation of a rule or order of the Commission, a state law, or in which there is a pressing public need, hearings shall be announced at least

4

Plaintiff alleges that "Magnolia is violating . . . the 1994 General Order,"[26] "LPSC procedural rules," "due-process requirements," and "the Administrative Procedure Act."[27] She contends that "Magnolia has no legitimate interest in expanding while under regulatory challenge."[28]

Because the Court finds that plaintiff lacks standing to pursue the injunctive relief she seeks against Magnolia, and because this Court lacks subject matter jurisdiction over any claims against LPSC, the Court will deny plaintiff's motion for a TRO.

## II.    LEGAL STANDARDS

### a. TRO and preliminary injunction

The purpose of a TRO is to preserve the status quo and prevent irreparable harm until the court makes a final decision on injunctive relief. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). TROs[29] and "[p]reliminary injunctions are 'extraordinary

---

10 days in advance." *See* LPSC, *Rules of Practices and Procedures of the Louisiana Public Service Commission*, Rule 19, at 11–12.

[26] The Court understands plaintiff to be referring to the General Order of LPSC dated March 18, 1994, regarding "Commission Approval Required of Sales, Leases, Mergers, Consolidations, Stock Transfers, and All Other Changes of Ownership or Control of Public Utilities Subject to Commission Jurisdiction" (available at: https://lpsc.louisiana.gov/docs/orders/GO-3-18-1994.pdf).

[27] R. Doc. No. 46, at 6.

[28] *Id.* at 7.

[29] TROs and preliminary injunctions are considered under the same standard. *See, e.g.*, *Alvarado v. Noem*, No. 25-1048, 2025 WL 1519124, at *1 (E.D. La. May 28, 2025) (Africk, J.) (utilizing the same four elements to determine if the plaintiff was entitled to a TRO). Accordingly, the authority the Court cites within this section is applicable to both plaintiff's request for a TRO and her request for a preliminary injunction.

remedies' only to be granted when the moving party establishes" the following four elements:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Texas Trib. v. Caldwell Cnty., Texas*, 121 F.4th 520, 525 (5th Cir. 2024).  Plaintiff's failure to meet her burden on any element is enough for the Court to deny the request for a TRO or a preliminary injunction. *See Davis v. Thompson,* No. 19-493, 2020 WL 5775147, at *1 (M.D. La. Sept. 28, 2020) (citing *Roho, Inc. v. Marquis*, 902 F.2d 356, 261 (5th Cir. 1990)) ("If a plaintiff fails to meet his burden regarding any of the necessary elements, the Court need not address the other elements necessary for granting a preliminary injunction."). Moreover, "[c]ourts have wide discretion with respect to whether to grant preliminary injunctions." *Jones v. Gusman*, No. 12-859, 2015 WL 5714619, at *2 (E.D. La. Sept. 28, 2015) (Africk, J.) (citing *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir.1987)).

### b.  Subject matter jurisdiction

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). Under Federal Rule of Civil Procedure 12(b)(1), "a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Id.* (citation omitted). Courts are to consider a Rule 12(b)(1) jurisdictional argument before addressing any other arguments on the merits. *Id.*

6

(citing *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001)).

When ruling on a Rule 12(b)(1) motion, a court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010) (quoting *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. When a court determines that it does not have subject matter over an action, the action is dismissed without prejudice. *See, e.g., id.*; *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

## III.    ANALYSIS

Among other bases for their opposition, defendants contend that plaintiff cannot demonstrate that any harm she will experience is "irreparable," as her harm could be "adequately compensated" and "remedied" by monetary damages.[30] The Court spots a different, standing-related, problem with plaintiff's alleged harms: she has not established a cognizable injury that is traceable to and redressable by the injunctive relief she seeks.[31]

---

[30] R. Doc. No. 48, at 5; R. Doc. No. 49, at 14–15.

[31] *See Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002) ("Although Article III constitutional standing was not raised by the parties . . . we must—where necessary—raise it *sua sponte*."); *see also id.* at 332 n.1 ("[W]herever possible, Article III standing must be addressed before all other issues because it determines the court's fundamental power even to hear the suit."(quotations omitted)).

Plaintiff's motion names a number of harms that she contends are irreparable, including: "loss of intervention rights;" "inability to challenge tariffs;" "unsafe water conditions;" "contaminated tap water;" "constant boil-water advisories;" and "expansion of a non-compliant utility."[32] However, she emphasizes that an "inability to access safe drinking water is a classic form of irreparable harm."[33] Similarly, her reply seems to focus only on allegedly "irreparable harms" stemming from the allegedly "contaminated water,"[34] such as "health risks;" "inability to drink, cook, or bathe safely;" "financial strain;" "emotional distress;" and "ongoing exposure."[35]

"A preliminary injunction, like final relief, cannot be requested by a plaintiff who lacks standing to sue . . . . At the preliminary injunction stage, the movant must clearly show only that each element of standing" is satisfied. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329–30 (5th Cir. 2020). To establish standing a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). The alleged injury must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Merely alleging a "possible future injury" is insufficient. *Louisiana v. Biden*, 64 F.4th

---

[32] R. Doc. No. 46, at 6.
[33] *Id.* at 7.
[34] R. Doc. No. 50, at 6.
[35] *Id.* at 6–7.

674, 681 (5th Cir. 2023). Failure to establish one element alone is enough to find that a plaintiff lacks standing. *Id.* at 684.

Although difficult to follow, the Court construes plaintiff's motion as alleging that injunctive relief is necessary to: (1) prevent Magnolia and LSPC from abridging LPSC's procedural process when assessing Magnolia's proposals;[36] (2) prevent Magnolia from acquiring additional water utility providers or otherwise expanding its service territory; and (3) improve the quality of water utility services that plaintiff receives from Magnolia.[37]

Beginning with plaintiff's standing to seek preliminary injunctive relief against Magnolia,[38] merely alleging a potential procedural injury resulting from Magnolia's acquisition proposal and request therein for a shortened period for residents to file a notice of protest is "insufficient to create Article III standing." *Id.* at 683 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009)). Such alleged procedural harm "stands *in vacuo*, because [Magnolia's proposal], alone and without further action from [LPSC], will not cause concrete harm." *Id.* Similar to *Summers* and *Lujan*, plaintiff does not provide clear support for her claim that she will suffer a concrete harm as a result of Magnolia seeking to shorten LPSC's administrative review and approval process. The only harm that she alleges in this respect is the abbreviated opportunity to comment in opposition itself, which is purely procedural.

---

[36] R. Doc. No. 46, at 6. *See also supra* notes 21–25 and accompanying text.

[37] *Id.* at 3–5, 7.

[38] "'[P]laintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)).

A procedural injury alone is not enough to establish standing, plaintiff must also clearly show that the abridged procedural process will result in a concrete and particularized injury to her. *See Summers*, 555 U.S. at 497 ("[I]t would exceed [Article III's] limitations if, at the behest of Congress and in the absence of any showing of concrete injury, we were to entertain citizen suits to vindicate the public's nonconcrete interest in the proper administration of the laws . . . . [T]he party bringing suit must show that the action injures him in a concrete and personal way." (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572, n.7 (1992))). Plaintiff has not satisfied her burden with respect to her challenge to Magnolia's request that the LPSC Secretary exercise his discretion to shorten the administrative review process.

Second, the injunctive relief that plaintiff seeks with respect to preventing Magnolia's acquisition and expansion efforts do not concern a discrete injury that is traceable to Magnolia's conduct and redressable by her requested relief. To establish standing, plaintiffs seeking injunctive relief "must show 'a continuing injury or threatened future injury, not a past one.'" *Book People, Inc. v. Wong*, 91 F.4th 318, 328 (5th Cir. 2024) (citations omitted). They "must show that 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Id*. at 329–28.

Plaintiff's injuries cannot rely "on a highly attenuated chain of possibilities" that "require[s] guesswork as to how independent decisionmakers will exercise their judgment." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 413 (2013). She must articulate a "'fairly traceable' causal connection 'between the injury and the conduct

complained of.'" *Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 514 (quoting *Lujan*, 504 U.S. at 560). "And to satisfy the redressability requirement, [plaintiff] must show that a 'favorable decision will relieve a discrete injury to [herself].'" *Wong*, 9 F.4th at 332 (alterations added) (quoting *Air Evac EMS, Inc.*, 851 F.3d at 514). "It must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

Plaintiff's request for preliminary injunctive relief cannot be predicated, alone, on the past injuries that she suffered from Magnolia. *See Wong*, 91 F.4th at 328. Plaintiff has not demonstrated that Magnolia's acquisition or expansion of its control to additional water utilities would further impact the services that she receives from Magnolia. In other words, she has not "clearly show[n]," *see Speech First, Inc.*, 979 F.3d at 330, that she would be "among the injured," *Lujan*, 504 U.S. at 563, affected by Magnolia's further expansion.

Finally, the core harm that plaintiff seeks to rectify with her lawsuit is the allegedly unsafe quality of her water services. However, plaintiff has not explained how the injunctions she seeks will rectify the allegedly defective water services that she receives from Magnolia. "[I]t is entirely conjectural whether" the harm that plaintiff suffers "will be altered or affected" if Magnolia is enjoined from acquiring additional utility providers or expanding to new areas. *See Lujan*, 504 U.S. 571. Therefore, it is not clear to this Court that the injunction plaintiff seeks will actually redress the injury of which she complains.

11

Consequently, the Court finds that plaintiff lacks standing to seek the injunctive relief sought in her motion for a TRO and preliminary injunction against Magnolia.

Assuming, without deciding, that plaintiff has standing against LPSC, sovereign immunity bars plaintiff's claims against it. In a separate motion[39] before the Court, LPSC contends that "all of plaintiff's claims" against it are barred by sovereign immunity pursuant to the Eleventh Amendment because it is an "arm of the state" and Louisiana has not waived its sovereign immunity for suits brought in federal court.[40]

In response, plaintiff argues that, pursuant to *Ex parte Young*, "suits for prospective injunctive relief against state officials for ongoing constitutional violations are permitted."[41] Additionally, plaintiff argues that, pursuant to *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989), "federal courts may review constitutional claims arising from state regulatory proceedings when the claim is independent of rate setting."[42]

LPSC replies that the *Ex parte Young* exception does not apply to plaintiff's claims because she brings suit against a state *agency*.[43] Accordingly, her claims are barred "regardless of the nature of the relief being sought."[44]

---

[39] R. Doc. No. 26.
[40] R. Doc. No. 26-1, at 7.
[41] R. Doc. No. 29, at 4.
[42] *Id.*
[43] R. Doc. No. 38, at 2.
[44] *Id.*

"Eleventh amendment immunity is a jurisdictional issue that cannot be ignored, for a meritorious claim to that immunity deprives the court of subject matter jurisdiction of the action." *Pittman v. Devereaux*, No. 21-1786, 2021 WL 6125054, at *1 (E.D. La. Dec. 28, 2021) (Africk, J.) (cleaned up) (quoting *Jefferson v. La. Sup. Ct.*, 46 F. App'x 732, 732 (5th Cir. 2002)). "The Eleventh Amendment bars federal suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it."[45] *Corn v. Mississippi Dep't of Pub. Safety*, 954 F.3d 268, 274 (5th Cir. 2020) (internal quotations and citations omitted); *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.").

In addition, the so-called *Ex parte Young* exception holds that "sovereign immunity does not bar suits against state officers for prospective declaratory or injunctive relief because officers act as private persons 'stripped of [their] official clothing' when they violate federal law." *Turnage v. Britton*, 29 F.4th 232, 239 (5th Cir. 2022). "The *Young* exception to state sovereign immunity applies when the party invoking it establishes three criteria." *Id.*

> First, the complaint "must name individual state officials as defendants in their official capacities." Second, the complaint must allege an ongoing violation of federal law. And finally, the complaint must seek prospective relief.

---

[45] Louisiana has not waived its Eleventh Amendment immunity for suits brought in federal district court. *See* LA. REV. STAT. § 13:5106(A); *see also Richardson v. S. Univ.*, 118 F.3d 450, 453 (5th Cir. 1997).

*Id.* Failure to establish one of the *Ex parte Young* criteria will result in plaintiff's claims being dismissed for lack of jurisdiction. *See id.* at 239 & n.2.

The Court need look no further than the caption of this case to see that this exception does not apply: plaintiff sues LPSC[46] and not any individual state official.[47] The Court therefore finds that LPSC is entitled to Eleventh Amendment immunity and this Court must not only deny plaintiff's motion for a TRO, but must also dismiss all of plaintiff's claims against LPSC. *Cf. Ratliff v. Louisiana State*, No. 24-2757, 2025 WL 1748480, at *2 (E.D. La. June 23, 2025) (Africk, J.), *aff'd sub nom. Ratliff v. Hammond City*, No. 25-30404, 2026 WL 1383300 (5th Cir. May 18, 2026).

## IV.    CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that plaintiff's motion[48] for a TRO and preliminary injunction is **DENIED**.

**IT IS FURTHER ORDERED** that LPSC's motion[49] to dismiss is **GRANTED.** Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE** with respect to LPSC.

---

[46] *See Union Pac. R. Co. v. Louisiana Pub. Serv. Comm'n*, 662 F.3d 336, 340 n.3 (5th Cir. 2011) (finding LPSC was "functionally the State of Louisiana and [was] entitled to Eleventh Amendment immunity").

[47] *See* R. Doc. No. 1.

[48] R. Doc. No. 46.

[49] R. Doc. No. 26.

New Orleans, Louisiana, June 4, 2026.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**