**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CONNIE NORRIS** | **CIVIL ACTION** |
| **VERSUS** | **No. 26-163** |
| **MAGNOLIA WATER UTILITIES OPERATING COMPANY, LLC, ET AL.** | **SECTION I** |

## ORDER AND REASONS

*Pro se* plaintiff Connie Norris ("plaintiff") complains about the quality and regulation of her water utilities. She brings claims against her private water utility providers, defendants Magnolia Water Utilities Operating Company, LLC, Magnolia Water Services Group, LLC, Magnolia Water Holding Company, LLC and Louisiana Central States Water, LLC ("the "Magnolia Water defendants" or "Magnolia") as well as Central States Water Resources, Inc. ("CSWR").[1] She also sues public defendant Louisiana Public Service Commission ("LPSC") (collectively, with CSWR and Magnolia, "defendants").[2]

There are two motions before the Court, in which defendants seek dismissal of plaintiff's claims against them. First, CSWR filed a motion[3] to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). Second,

---

[1] Plaintiff has also named Josiah Cox, the founder and Chief Executive Officer of CSWR, in her complaint. *See* R. Doc. No. 1, at 1; R. Doc. No. 1-17, at 2. Cox has not yet been served.

[2] Plaintiff has also named the Louisiana Department of Health ("LDH") in her complaint. *See* R. Doc. No. 1, at 1; R. Doc. No. 1-17, at 3. Summons with respect to LDH was returned unexecuted as it was not accepted. *See* R. Doc. No. 12, at 3.

[3] R. Doc. No. 22.

CSWR and the Magnolia Water defendants filed a combined motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), and failure to state a claim, pursuant to Rule 12(b)(6), along with a motion to stay the remaining claims.[4] Plaintiff opposes both motions.[5]

On June 4, 2026, this Court denied plaintiff's motion for a TRO and granted LPSC's motion to dismiss for lack of subject matter jurisdiction, finding that LPSC is entitled to Eleventh Amendment immunity.[6]

## I.    BACKGROUND

Plaintiff is a resident of St. Tammany Parish, Louisiana, and her claims arise from defendants' provision and regulation of her water utilities.[7] Plaintiff identifies "Magnolia Water/CSWR" as the water utilities provider servicing her area.[8] According to plaintiff, since becoming a "Magnolia/CSWR ratepayer . . . approximately five years" ago, she has developed "severe medical conditions consistent with exposure to contaminated water."[9] She submits that she has "incurred more than $200,000 in medical expenses related to exposure" to the contaminated water.[10] She also alleges that she has incurred "approximately $10,000 in property damage" due to the contaminated, unsafe water.[11]

---

[4] R. Doc. No. 32.

[5] R. Doc. Nos. 35, 37.

[6] *See* R. Doc. No. 51.

[7] *See generally* R. Doc. No. 1.

[8] *Id.* ¶ 5.

[9] *Id.* ¶ 10.

[10] *Id.* ¶ 16.

[11] *Id.* ¶ 12.

The present matter is not the first time that plaintiff has complained of these allegedly failing water systems. She is an intervenor in numerous proceedings before LPSC, which she identifies as the body that "regulates Magnolia/CSWR's rates and acquisitions."[12] She claims that she, along with other St. Tammany residents, have "warned" LPSC of the "existing water system failures" to no avail.[13] Despite residents' warnings, and in disregard of a resolution passed by the St. Tammany Parish Council "urging LSPC to halt further acquisitions until existing issues were corrected," LPSC has allegedly continued to approve "Magnolia/CSWR expansions."[14] LPSC has also allegedly continued to approve rate increases "despite unresolved violations" and "without a complete financial record from Magnolia/CSWR."[15]

According to plaintiff, LDH tested the allegedly contaminated water systems and "found elevated contaminants including TTHM [Total Trihalomethanes] . . . and chloroform[.]"[16] Yet, LDH still assigned "Magnolia/CSWR a Grade A rating."[17] Plaintiff also alleges that LDH failed to conduct sanitary surveys, as is "required" by Title 51 of the Louisiana Sanitary Code.[18]

Plaintiff's complaint raises her grievance with respect to one instance in particular, in which Magnolia "shut down" and "abandoned" one water system and switched the residents who had previously been connected to that system to another

---

[12] *Id.* ¶ 6.
[13] *Id.* ¶¶ 18–22.
[14] *Id.* ¶¶ 21–22.
[15] *Id.* ¶¶ 14–15.
[16] *Id.* ¶ 23.
[17] *Id.* ¶ 24.
[18] *Id.* ¶ 25.

system, causing that latter water system to fail.[19] Upon failure of that system, Magnolia then switched those residents back to the original system, which "lacked the required sanitary surveys" and caused residents to "experience[] brown water, bacterial contamination, and low pressure for more than a year."[20]

In addition, plaintiff contends that she has been deprived of "meaningful" participation in LPSC proceedings.[21] For example, she alleges that "[e]vidence [she] submitted was not entered into the record," an "ALJ refused to allow [her] to speak, correct the record, or address missing discovery," and "[t]he docket was closed immediately after [she] submitted supplemental evidence."[22]

Plaintiff raises eight claims against defendants, without specifying for each claim which defendants it pertains to. First, she alleges that defendants violated the Safe Drinking Water Act ("SDWA"), 42 U.S.C. §§ 300f *et seq.*, for "delivering contaminated water, failing to notify the public, and failing to comply with federal water safety standards."[23] Second, she alleges that defendants violated Title 51 of Louisiana's Public Health Sanitary Code "by operating water systems without required sanitary surveys and failing to maintain safe water quality."[24] Third, plaintiff brings a claim for "arbitrary and capricious agency action" against LSPC for it "approving rate increases without a complete financial record and ignoring public

---

[19] *Id.* ¶ 28.
[20] *Id.* ¶ 30.
[21] *Id.* ¶ 35.
[22] *Id.* ¶¶ 36–38.
[23] *Id.* ¶¶ 39–42.
[24] *Id.* ¶¶ 43–46.

health concerns."[25] Fourth, she alleges violations of procedural due process because she contends that she was "denied meaningful participation in regulatory proceedings, including exclusion of evidence and closure of the docket without proper notice."[26]

Fifth, plaintiff brings claims for negligence and gross negligence because "[d]efendants owed a duty of care to [her] and other ratepayers to provide safe and reliable water service," and "[d]efendants breached that duty by failing to maintain safe water systems and ignoring known hazards."[27] Sixth, she raises a claim based on "[d]efendants['] fail[ure] to protect public health by allowing unsafe water conditions to persist" as well as defendants' failure "to enforce regulatory standards."[28] Seventh, plaintiff brings a claim for unjust enrichment because defendants "received financial benefits from unsafe water service and rate increases without providing lawful or safe service."[29] Eighth, plaintiff brings a claim pursuant to Louisiana Revised Statute § 40:4(A)(8)(a) because, first, § 40:4(A)(8)(a) "requires LDH to ensure that public water systems are operated, maintained, and monitored in a manner that protects public health and prevents the distribution of unsafe water," second, "Magnolia/CSWR operated unsafe systems failed to prevent

---

[25] *Id.* ¶¶ 47–50.
[26] *Id.* ¶¶ 51–54.
[27] *Id.* ¶¶ 55–59.
[28] *Id.* ¶¶ 60–63.
[29] *Id.* ¶¶ 64–67.

contamination and reconnected residents to an abandoned and unsurveyed[*sic*] well system," and, third, "LDH and OPH[30] failed to enforce their statutory duties."[31]

Plaintiff's complaint seeks declaratory and injunctive relief as well as monetary damages in the form of "refunds and billing corrections," compensatory damages, and "punitive and exemplary damages in an amount not less than $1,000,000,000 . . . due to ongoing, knowing, reckless, and harmful conduct of Magnolia/CSWR and the regulatory failures that allowed the harm to continue."[32]

## II.    LEGAL STANDARDS

### a.    *Subject Matter Jurisdiction, Rule 12(b)(1)*

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). Under Federal Rule of Civil Procedure 12(b)(1), "a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Id.* (citation omitted). Courts are to consider a Rule 12(b)(1) jurisdictional argument before addressing any other arguments on the merits. *Id.* (citing *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001)).

When ruling on a Rule 12(b)(1) motion, a court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint

---

[30] Plaintiff's complaint does not define "OPH." *See generally id.* The Court surmises that plaintiff means to refer to LDH's Office of Public Health.
[31] *Id.* ¶¶ 68–73.
[32] *Id.* at 6.

alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010) (quoting *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. When a court determines that it does not have subject matter jurisdiction over an action, the action is dismissed without prejudice. *See, e.g., id.*; *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

### b.    *Personal Jurisdiction, Rule 12(b)(2)*

The power of the Court to require a nonresident defendant to appear before it and to submit to its will is a great power—one that the Court may exercise only within constitutional and statutory bounds.  As the Fifth Circuit has explained, "[a] federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). "In determining whether a defendant is subject to personal jurisdiction, a district court must accept as true the uncontroverted factual allegations in the plaintiff's complaint; a *prima facie* showing is all that is required." *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013) (internal citations omitted).

7

Louisiana's long-arm statute "extends personal jurisdiction of courts sitting in Louisiana, including federal courts, to the limits permitted under the due process clause of the Fourteenth Amendment." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 624 (5th Cir. 1999); *see also* LA. REV. STAT. § 13:3201 (Louisiana's long-arm statute). Thus, whether the Court possesses personal jurisdiction over the nonresident defendants in this case "depends on the parameters of federal due process." *Telephone Elec. Corp. v. S. Pac. Telecomm. Co.*, No. 95-31037, 1996 WL 556856, at *2 (5th Cir. Sep. 10, 1996).

The Fourteenth Amendment's Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Guidry*, 188 F.3d at 624 (internal quotation marks omitted); *see also* U.S. Const. amend. XIV, § 1. "Personal jurisdiction comports with due process when first, the defendant has the requisite minimum contacts with the forum state and second, requiring the defendant to submit to jurisdiction in the forum state would not infringe on 'traditional notions of fair play and substantial justice.'"[33] *Companion Prop. & Cas.*, 723 F.3d at 559

---

[33] "In determining whether or not exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof and it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *McFadin*, 587 F.3d at 759-60 (internal quotation marks omitted). When conducting the fairness inquiry, courts consider "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006).

(quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"The 'minimum contacts' prong of the due process analysis may be subdivided into two different classifications of personal jurisdiction depending on the types of contacts the nonresident defendant has with the forum state"—namely, "specific" personal jurisdiction and "general" personal jurisdiction. *Telephone Elec. Corp.*, 1996 WL 556856, at *2.

> For specific personal jurisdiction, a plaintiff makes a *prima facie* showing of minimum contacts when his claim arises from the defendant's contact with the forum. For general personal jurisdiction, a plaintiff makes the requisite showing when that defendant's contacts are "continuous and systematic," so that the exercise of jurisdiction is proper irrespective of the claim's relationship to the defendant's contact with the forum.

*Companion Prop. & Cas.*, 723 F.3d at 559.

Ultimately, the "touchstone" of the minimum contacts inquiry "is whether the defendant's conduct shows that it reasonably anticipates being haled into court." *McFadin*, 587 F.3d at 759 (internal quotation marks omitted). "The defendant must not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Id.* (internal quotation marks omitted).

### c.    *Failure to state a claim, Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's complaint must meet the requirement

in Rule 8(a)(2), requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). While this short and plain statement does not require "detailed factual allegations," it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotations and citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation and internal quotations omitted).

"[T]he face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the [plaintiff's] claim." *Hi-Tech Elec., Inc v. T&B Constr. & Elec. Servs., Inc.*, No. 15-3034, 2017 WL 615414, at \*2 (E.D. La. Feb. 15, 2017) (Vance, J.) (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 255–57 (5th Cir. 2009)). A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation and internal quotations omitted). The complaint "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (citation and internal quotations omitted).

In considering a motion to dismiss, a court views the complaint "in the light most favorable to [the] plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in [the] plaintiff's favor." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). A court must limit its review to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "When a party bases a motion to dismiss on matters outside the pleadings, the court has discretion either to accept the extraneous material and convert the motion to dismiss into a motion for summary judgment, or to decide the motion, as defendant styled it, under the principles of Rule 12(b)(6)." *McDonald v. Kansas City S. Ry. Co.*, No. 16-15975, 2017 WL 1709353, at *2 (E.D. La. May 3, 2017) (Vance, J.).

### III. ANALYSIS

#### a. Subject Matter Jurisdiction

##### 1.    Safe Drinking Water Act ("SWDA")

Plaintiff's first claim is for violations of the SDWA.[34] "The Safe Drinking Water Act, 42 U.S.C.A. §§ 300f *et seq.*, was passed in 1974 to establish uniform quality

---

[34] R. Doc. No. 1 ¶¶ 39–42.

standards for the approximately 240,000 public water systems in the United States to reduce contamination in drinking water." *Hussey v. Total Env't Sols.*, Inc., No. 14-2186, 2015 WL 7282073, at *1 (W.D. La. Nov. 16, 2015) (quoting Robert W. Vinal, J.D., Citizens' Suits Under the Safe Drinking Water Act, 67 Am. Jur. Proof of Facts 3d 95 (2002)). "Public drinking water suppliers in the United States are under a duty to provide their customers with drinking water that meets federal quality standards established under the provisions of the SDWA." *Id.* For example, "[a]mong other requirements, the [SWDA] imposes maximum permissible levels for certain drinking water contaminants." *Spotts*, 613 F.3d at 570.

"The SDWA does not create a private civil action under which damages can be recovered for violation of a provision of the SDWA." *Hussey*, 2015 WL 7282073, at *1 (quoting 67 Am. Jur. Proof of Facts 3d 95 § 1). However, it permits "citizens' civil actions where the government has failed to pursue an action against a violator." *Id.* (citing 42 U.S.C. § 300j-8(a)(1)). Section 300j-8(a)(1) states: "Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf . . . against any person (including (A) the United States, and (B) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any requirement prescribed by or under this subchapter."

Plaintiffs bringing citizens' civil actions must still "prior to filing the action . . . timely perform[] certain pre-suit notice procedures." *Hussey*, 2015 WL 7282073, at *2. With respect to notice, § 300j-8(b)(1)(A) states that "[n]o [citizens'] civil action

12

may be commenced . . . prior to sixty days after the plaintiff has given notice of such violation (i) to the Administrator, (ii) to any alleged violator of such requirement and (iii) to the State in which the violation occurs." *See also Hussey*, 2015 WL 7282073, at *2 (stating that the SDWA's citizens' civil suit authorization "is governed by certain procedural requirements . . . i.e. . . . proper notice of the intent to sue properly served on the EPA, prospective defendant and the government of the subject state, at least 60 days prior to the filing of the civil action"). "This notice requirement has been held to constitute a jurisdictional prerequisite and a subsequent SDWA citizen's civil complaint will be dismissed if the notice is not properly served or if the action is commenced prior to the expiration of the 60 day period." 67 Am. Jur. Proof of Facts 3d 95 § 37 (citing *ACORN v. Edwards*, 842 F. Supp. 227, 230 (E.D. La. 1993) (Schwartz, Jr., J.) (treating the SDWA's 60-day notice requirement as matter of subject matter jurisdiction)); *see also Concerned Pastors for Soc. Action v. Khouri*, 194 F. Supp. 3d 589, 597 (E.D. Mich. 2016) (same). Federal regulations set forth the required contents of the notice. *See* 40 C.F.R. § 135.12;[35] *see also* § 300j-8(b).

---

[35] 40 C.F.R. § 135.12(a) states: "Notice regarding an alleged violation of any requirement prescribed by or under the Act shall include sufficient information to permit the recipient to identify the specific requirement alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of the alleged violation, and the full name, address, and telephone number of the person giving notice."

The Magnolia Water defendants contend that plaintiff has failed to comply with the SWDA's 60-day notice requirement and, consequently, her SWDA claim should be dismissed for lack of jurisdiction.[36]

In response, plaintiff seems to argue that because her claims involve "ongoing violations" she may "proceed without pre-suit notice."[37] She cites no caselaw in support of her position.[38] *Cf. Henriquez v. 42 U.S.C. 654(3) Texas Child Support Div.*, 744 F. App'x 234, 235 (5th Cir. 2018) ("While this court may liberally construe a *pro se* appeal, we will not search the record and related caselaw to create arguments on an appellant's behalf."). Because plaintiff has not given the statutorily required notice, the Court dismisses plaintiff's SDWA claim without prejudice.

## 2.     Rate-related claims

Both LPSC's motion and the Magnolia Water defendants' motion argue that this Court lacks subject matter jurisdiction over plaintiff's "claims pertaining to rates."[39]

---

[36] *See* R. Doc. No. 32-1, at 6 ("No such notice was provided in this case, nor does plaintiff allege that she satisfied this requirement.").

[37] R. Doc. No. 37, at 5.

[38] *Id.* The Court notes that plaintiff may be referring to the SDWA's jurisdictional requirement that she "allege that the defendant's illegal actions are ongoing and are resulting in a continuing violation of an SDWA requirement." 67 Am. Jur. Proof of Facts 3d 95 § 26; *see also Jones v. Dow Chem. Co.*, 885 F. Supp. 905, 910 (M.D. La. 1994) ("[B]ecause the plaintiffs' petition does not allege an 'ongoing' violation—a jurisdictional prerequisite to the maintenance of a SDWA claim—the Court determines that it lacks federal question jurisdiction under the SDWA."). The Court has found no caselaw suggesting that plaintiff's satisfaction of one jurisdictional requirement somehow excuses another jurisdictional requirement.

[39] R. Doc. No. 32-1, at 3–6; R. Doc. No. 26-1, at 8–12. The Magnolia Water defendants also seem to argue that this Court lacks subject matter jurisdiction over plaintiff's

14

Plaintiff's complaint seeks injunctive relief related to "rate hikes."[40] However, she explicitly rejects in her response that her claims amount to "rate-setting disputes."[41] Therefore, to the extent that plaintiff's complaint attempted to bring claims for injunctive relief relating to orders approving rate increases, such have been abandoned. *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023) ("This circuit's well-settled precedent instructs that a party abandons a claim

---

claims because Louisiana state law vests exclusive jurisdiction in LPSC for cases involving the *services* provided by water utilities in Louisiana. *See* R. Doc. No. 32-1, at 4–5 (citing *Richards v. Baton Rouge Water Co.*, No. 2013-0873, 142 So. 3d 1027 (La. App. 2014)). This Court's jurisdiction over plaintiff's clams arises from federal law, 28 U.S.C. §§ 1331 and 1367. "State law cannot strip a federal court of jurisdiction that federal law otherwise provides." *Mignott v. State Bar of Georgia Found., Inc.*, 146 F.4th 1095, 1097 (11th Cir. 2025) (citing U.S. CONST. art. VI, cl. 2) (holding that Georgia law vesting exclusive jurisdiction in the state supreme court could not override federal court's subject matter jurisdiction, pursuant to § 1331, over the plaintiff's federal cause of action); *cf. Tercero v. Texas Southmost Coll. Dist.*, 989 F.3d 291, 298 (5th Cir. 2021) ("However extensive their power to create and define substantive rights, the states have no power directly to enlarge or contract federal jurisdiction. This rule is a consequence of the exclusive power of Congress to control the jurisdiction of the federal courts and the Supremacy Clause implications of a state's suggestion that it might somehow (even indirectly) provide otherwise." (internal quotation and citation omitted)); *but see Scherer v. MGM Resorts Int'l*, No. 22-258, 2023 WL 2776675, at \*5 (S.D. Miss. Apr. 4, 2023) (honoring state law vesting exclusive jurisdiction in the state commission because federal jurisdiction was based on diversity jurisdiction); *see id.* ("Because this Court, sitting in diversity, must apply state substantive law, it lacks jurisdiction over a Mississippi state-law claim where all Mississippi state courts would find that they likewise lack jurisdiction over the same claim."). Magnolia's arguments therefore fail.

[40] R. Doc. No. 1, at 6 (seeking injunctive relief in the form of "[a]n immediate halt on all new rate hikes" and "[a] partial reversal of current rate hikes, restoring rates to a lawful and reasonable level").

[41] R. Doc. No. 37, at 3 ("Defendants repeatedly assert that [p]laintiff's lawsuit concerns 'rates'[,] 'services[,]' [and] 'regulatory appeals' . . . This is incorrect.").

15

by failing to defend it in response to motions to dismiss and other dispositive pleadings.").[42]

### b.     *Personal Jurisdiction*

CSWR alleges that this Court lacks both general and specific personal jurisdiction over it.[43] First, it notes that plaintiff's complaint "contains no jurisdictional allegations regarding" CSWR at all, and is therefore "deficient for this reason alone."[44] With respect to general personal jurisdiction, it contends that this Court lacks personal jurisdiction over it because it is a Missouri corporation with its principal place of business in Missouri.[45]

As for specific personal jurisdiction, CSWR argues that plaintiff seems to be "poorly attempting to allege that she is a [CSWR] ratepayer" and may "incorrectly believe" that CSWR is "responsible for her drinking water services."[46] CSWR asserts that this is false; CSWR "does not provide [p]laintiff's drinking water services and

---

[42] The Court also notes, without deciding, that it appears the Johnson Act, 28 U.S.C. § 1342, would deprive this Court of jurisdiction over any "challenges to orders affecting rates." *See Turnage*, 29 F.4th at 240 ("The Johnson Act . . . states that district courts may not 'enjoin, suspend or restrain . . . any order affecting rates chargeable by a public utility' when four criteria are met: (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and, (2) The order does not interfere with interstate commerce; and, (3) The order has been made after reasonable notice and hearing; and, (4) A plain, speedy and efficient remedy may be had in the courts of such State."); *see also id.* at 241 ("The Act aimed to 'channel normal rate litigation into the state courts.'"). Because plaintiff abandons any such claims, the Court need not determine whether the Johnson Act divests this Court of federal jurisdiction.

[43] R. Doc. No. 22-1, at 2.

[44] *Id.*

[45] *Id.* at 2, 3–4.

[46] *Id.* at 2.

further does not have any other contact with the State of Louisiana."[47] CSWR also

attached an affidavit of Josiah Cox, the current President of CSWR, which states that

CSWR "has no physical presence in Louisiana," "provides no services in Louisiana,"

and "conducts no business in Louisiana."[48] Therefore, CSWR argues, plaintiff has not

alleged the requisite "minimum contacts" necessary to confer specific personal

jurisdiction on this Court.[49]

At this Court's request, CSWR also filed a supplemental memorandum in

support of its motion discussing whether this Court may assert jurisdiction over

CSWR as the parent company to the Magnolia Water defendants.[50] CSWR argues

that the exercise of personal jurisdiction over a foreign parent company cannot be

based "solely upon the contacts with the forum state" made by its subsidiaries.[51]

Furthermore, although there exist "some circumstances where the relationship

between a parent and subsidiary are so close that they could justify a finding that the

parent does business in a jurisdiction due to the local activities of its subsidiary,

---

[47] *Id.* at 5.

[48] R. Doc. No. 22-2, at 1.

[49] *See* R. Doc. No. 22-1, at 5.

[50] *See* R. Doc. No. 28 (ordering additional briefing "on the issue of whether CSWR's status as a parent company to other defendants in this matter affects this Court's personal jurisdiction analysis"); *see also* R. Doc. No. 31, at 1 ("Although not alleged in [p]laintiff's Complaint, [CSWR] discloses that it is a corporate affiliate of other defendants in this case, namely, Magnolia Water Utilities Operating Company, LLC, Magnolia Water Holding Company, LLC, Magnolia Water Services Group, LLC, and Louisiana Central States Water, LLC (referred to collectively herein as the 'Magnolia Water Defendants').").

[51] R. Doc. No. 31, at 1–2 (quoting *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004)).

[p]laintiff has made no such agency or alter ego allegation in this case."[52] Indeed, CSWR avers that plaintiff has not provided "any facts, or even allegations to overcome the presumption of corporate separateness" recognized in the Fifth Circuit.[53]

In response, plaintiff does not contest that this Court does not have general personal jurisdiction over CSWR.[54] Plaintiff's response instead argues that the Magnolia Water defendants are "wholly-owned subsidiar[ies]" of CSWR, which exist "solely to carry out CSWR's business operations in Louisiana."[55] Plaintiff contends that the Magnolia Water defendants do not "function independently" of CSWR and that CSWR "exercises complete control over [the Magnolia Water defendants'] operations, finances, policies, and decision-making."[56]

In support of her position, plaintiff points out that CSWR's "website and corporate materials describe [the Magnolia Water defendants] as one of its operating divisions."[57] According to plaintiff, the Magnolia Water defendants do "not maintain separate branding, separate corporate leadership, or independent operational decision-making."[58] As further evidence of CSWR's control over the Magnolia Water defendants' operations, plaintiff submits that CSWR has participated in LPSC

---

[52] *Id.* at 2.

[53] *See id.* at 2–3.

[54] *See generally* R. Doc. No. 35.

[55] *Id.* at 3, 6 ("CSWR created Magnolia for the specific purpose of acquiring and operating Louisiana water systems.").

[56] *Id.* at 2.

[57] *Id.* at 3; *see also* R. Doc. No. 35-6.

[58] R. Doc. No. 35, at 3.

18

proceedings on behalf of the Magnolia Water defendants and has identified itself therein as the "owner and operator of the systems at issue."[59] Plaintiff states that CSWR has purposefully availed itself of Louisiana's regulatory framework and argues that "CSWR cannot claim it is a stranger to Louisiana while simultaneously invoking Louisiana's regulatory protections and benefits."[60]

CSWR is correct that "[g]enerally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there." *Conti 11. Container Schiffarts-GMBH & Co. KG M.S., MSC Flaminia v. MSC Mediterranean Shipping Co. S.A.*, 91 F.4th 789, 800 (5th Cir. 2024) (quoting *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983)). "'This presumption of institutional independence . . . may be rebutted, however, by clear evidence' that the two corporations are 'fused . . . for jurisdictional purposes.'" *Id.* at 800–01 (quoting *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 251 (5th Cir. 2019) (quoting *Freudensprung*, 379 F.3d 327 (5th Cir. 2004))). When analyzing this issue, courts consider the following factors: "(1) the amount of stock owned by the

---

[59] *Id.* at 4. Plaintiff does not attach any documents from LPSC proceedings in which CSWR identifies itself as the parent company to the Magnolia Water defendants, and she does not direct the Court to any specific dockets in her response. *See generally* R. Doc. Nos. 35-2–35-9. Review of the LPSC dockets referenced in plaintiff's motion for temporary restraining order, R. Doc. No. 46, at 2, show filings made by Magnolia Water Utility Operating Company, LLC, which identify CSWR as its parent company and explain that they are "part of an affiliate group . . . which operate small water and/or wastewater utilities in Missouri, Kentucky, Louisiana, Texas, Tennessee, Mississippi, North Carolina, South Carolina, Florida, Arizona, and Arkansas." *See* Magnolia Water Utility Operating Company, LLC, *ex parte* filing in U-37584 (filed on May 16, 2025) and in U-37570 (filed on May 1, 2025).
[60] R. Doc. No. 35, at 7.

parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities." *Id.* at 801 (quoting *Diece-Lisa*, 943 F.3d at 251 and citing *Hargrave*, 710 F.2d at 1160).

The party invoking jurisdiction bears "the burden of showing, by clear evidence," that the parent company and its subsidiary "are not distinct corporate entities." *Id.*; *see also Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) ("This presumption of corporate separateness, however, may be overcome by clear evidence. . . . [T]he burden of making a prima facie showing of such symbiotic corporate relatedness is on the proponent of the agency/alter ego theory."). "[T]he court may consider the contents of the record before the court at the time of the motion, including affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Savoie v. Pritchard*, 122 F.4th 185, 190 (5th Cir. 2024) (internal quotations omitted). "When considering the host of allegations and evidence, we accept as true plaintiff's uncontroverted, nonconclusional factual allegations and resolve all controverted allegations in the plaintiff's favor." *Id.* (internal quotations omitted).

Plaintiff's complaint makes no jurisdictional allegations.[61] Instead she merely uses "Magnolia Water/CSWR" when alleging actions pertaining to the provision of

---

[61] *See* R. Doc. No. 1.

her water systems.[62] The fact that CSWR is the parent company to the Magnolia Water defendants, standing alone, is insufficient to establish personal jurisdiction over CSWR. *See Conti*, 91 F.4th at 800.

However, the exhibits attached to plaintiff's response reveal a more intertwined relationship than either the face of her complaint or CSWR's motion to dismiss suggest. Plaintiff first attaches Magnolia Water Utility Operating Company, LLC's articles of organization, which identify CSWR as "manager."[63] She next attaches an article titled "Magnolia Water defends rate hikes, citing costly compliance projects,"[64] which explains that Josiah Cox, "CEO of Central States Water Resources, Magnolia's parent company," appeared before LPSC on behalf of Magnolia at a hearing regarding rate increases.[65] Cox is quoted therein as telling "regulators [that] the company has inherited failing systems often absent of investment in decades," and stating that "'when *we* buy these systems, you have got to remember, they often had not had rate increases for decades . . . it was a chronic lack of investment.'"[66] The article also states that Cox responded to LPSC Commissioners' questions regarding "customer complaints about water quality in neighborhoods such

---

[62] *See, e.g., id.* ¶¶ 5, 10–11, 15, 31–33.

[63] R. Doc. No. 35-2, at 3.

[64] *See Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 334 n.1 (5th Cir. 2020) (considering a "2005 Houston Chronicle Article" when discussing the defendant's contacts with the forum state); *see also id.* ("Outside of the fact that the majority of this evidence provides little to no jurisdictional support, we still consider the contents of the record at the time of the motion." (internal quotations omitted)).

[65] *See* R. Doc. No. 35-3, at 1.

[66] *Id.*

21

as . . . St. Tammany Parish."[67] Cox is quoted therein as stating that "[s]ince starting operations here, going on six years ago, *we've* run at a cash loss the entire time. . . . Even with the rate increases *we've* had, *we* still have a $9 million cash loss that has not been recovered from this state. *We've* invested $400 million in this state and not pulled $1 out."[68]

Plaintiff's third exhibit contains a public records search which reveals that defendant Magnolia Water Utility Operating Company, LLC's mailing address is the same as CSWR's "principal address."[69] Plaintiff also directs the Court to filings made in LPSC proceedings,[70] in which CSWR is mentioned multiple times.[71] One such filing, dated May 18, 2026, is Magnolia's "petition" to acquire the water system assets currently operated by Parks Waterworks, Inc., and it states:

> Through its relationship with CSWR . . . Magnolia has access to highly skilled technical, managerial, and financial experts and resources not usually available to smaller water and wastewater companies. Magnolia's access to CSWR's personnel provides extensive experience in technical, managerial, and financial aspects of the utility industry, particularly small systems, and also innovative operational, marketing, and customer service programs that provide high quality advanced services at fair and reasonable rates.

*See* LPSC Docket No. S-37934.

---

[67] *Id.*

[68] *Id.*

[69] *Compare* R. Doc. No. 35-4, at 2, *with* Magnolia Water Utility Operating Company, LLC, *ex parte* filing in U-37570 (filed on May 1, 2025), p. 2.

[70] R. Doc. No. 35, at 15.

[71] *See, e.g.*, Magnolia Water Utility Operating Company, LLC, *ex parte* filing in U-37570 (filed on May 1, 2025).

Plaintiff's fourth exhibit is a letter from a CSWR "Customer Service Experience Escalation Specialist" responding to a Magnolia Water customer's complaint.[72] Her fifth exhibit is a screenshot showing that Magnolia Water appears on CSWR's website.[73]

Finally, plaintiff attaches a "Consumer Confidence Report" ("CCR") that she received in the mail from Magnolia.[74] Under a section titled "OUR MISSION," the CCR states: "Central States Water Resources . . . is working to bring safe, reliable, and environmentally responsible water sources to every community in the U.S."[75] In a section titled "Violation Summary," in the column labeled "Corrective Actions," the CCR notes that "*CSWR* – Louisiana has corrected the issue by ensuring the report includes all required information to properly inform our customers about their drinking water quality."[76]

The facts and evidence presented by plaintiff noticeably contradict the notion that CSWR "conducts no business in Louisiana."[77] The evidence also seems favorable toward establishing some of the *Hargrave* factors. With respect to the first factor, plaintiff asserts, and CSWR does not contest, that "Magnolia is a wholly-owned subsidiary of CSWR."[78] *See Croom v. Bristow Grp. Inc.*, No. 23-5092, 2024 WL 4542503, at *5 (E.D. La. Oct. 22, 2024) (Guidry, J.) (stating that an entity being a

---

[72] *See* R. Doc. No. 35-5.
[73] R. Doc. No. 35-6, at 2–3.
[74] *See* R. Doc. No. 35-7, at 1.
[75] *Id.*
[76] *Id.* at 3.
[77] R. Doc. No. 22-2, at 1.
[78] R. Doc. No. 35, at 2.

"wholly-owned subsidiary, indicates alter ego jurisdiction"). With respect to the second factor, there is evidence of commonality of at least one officer, Josiah Cox, who is the president of both CSWR and Magnolia Water Utility Operating Company, LLC,[79] however, there is also evidence that CSWR and Magnolia have different headquarters.[80] The second factor is therefore, at most, only slightly favorable to plaintiff. Evidence supporting the fifth factor suggests that CSWR exerts some control over Magnolia's policies and "day to day activities," such as responding to consumer complaints and appearing on behalf of Magnolia in LPSC proceedings. *Diece-Lisa*, 943 F.3d at 252. But it is not clear from the evidence that CSWR "exercises complete control" over Magnolia, as plaintiff alleges in her response brief. *See Gonzalez v. Bank of Am. Ins. Servs., Inc.*, 454 F. App'x 295, 301 (5th Cir. 2011) (finding "no evidence or allegation" suggesting that the parent company had "any greater influence over [its subsidiary] than would be normal for a significant shareholder in a company"); *see also Edwards v. Wal-Mart Stores, Inc.*, No. 18-138, 2019 WL 1061670, at *2 (N.D. Miss. Mar. 6, 2019) (citation modified) (quoting *Barrett v. Lombardi*, 239 F.3d 23, 27 (1st Cir. 2001)) ("Allegations in a . . . brief or legal memorandum are insufficient, even under the relatively relaxed prima facie

---

[79] *See* Magnolia Water Utility Operating Company, LLC, *ex parte* filing in U-37584 (filed on May 16, 2025), "Pre-filed Direct Testimony of Josiah Cox," p. 2.

[80] R. Doc. No. 35-4, at 2 (listing Magnolia Water Utility Operating Company, LLC's address as 10761 Perkins Rd Ste A, Baton Rouge, LA 70810-1694); *see also* Magnolia Water Utility Operating Company, LLC, *ex parte* filing in U-37584 (filed on May 16, 2025), p. 2 ("The principal address of Central States and CSWR is 1630 Des Peres Road, Suite 140, Des Peres, MO 63131. The principal address of Magnolia is 10761 Perkins Road, Suite A, Baton Rouge, LA 70810.").

standard, to establish jurisdictional facts."); *see also Pearson v. Shriners Hosps. for Child.*, 736 F. Supp. 3d 521, 524 (S.D. Tex. 2024) ("The court is not obligated to credit conclusory allegations, even if uncontroverted.").

Notwithstanding any favorable weight carried by the first, second, and fifth factors, there is a lack of evidence supporting the existence of other *Hargrave* factors, which have the potential to weigh heavily against plaintiff. For example, plaintiff makes no allegations and supplies no evidence with respect to whether "corporate formalities are observed,"[81] the third *Hargrave* factor, or "whether the entities maintain separate accounting systems," the fourth *Hargrave* factor.[82] Lack of evidence and allegations with respect to the third factor is significant in this Court's weighing of the *Hargrave* factors. *See Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 331 (5th Cir. 2011) ("Where a parent and subsidiary observe corporate formalities, the plaintiff has a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to the parent."). Furthermore, although the Court determined that the first and second *Hargrave* factors are favorable to plaintiff, the Fifth Circuit has been clear that those two factors alone cannot rebut the presumption of corporate separateness. *See Hargrave*,

---

[81] *See, e.g.*, *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 587-88 (5th Cir. 2010) (finding that there was "absolutely nothing to suggest that the corporate formalities were not observed at all times" based on the fact that there was no evidence of: "undocumented transfers of funds between the . . . entities;" "unclear allocation of profits and losses;" and director and shareholder meetings being held jointly); *see also id.* (noting that although the entities shared an office, "the office space of each entity was separate within the buildings").
[82] *See generally* R. Doc. No. 35.

710 F.2d at 1160 ("We have noted often that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations.").

On balance, the Court finds that plaintiff has not presented sufficient uncontroverted allegations and evidence establishing personal jurisdiction over CSWR on an alter ego theory. *Cf. Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990) (holding that the parent was not the alter ego of its subsidiaries despite the parent: "own[ing] 100% of its subsidiaries," "remain[ing] responsible for general policy," "offer[ing] benefit plans to its subsidiaries' employees;" and "fil[ing] a consolidated federal tax return" with its subsidiaries because, among other reasons, "these factors are outweighed . . . by the fact that [the parent] observes corporate formalities"); *Freudensprung*, 379 F.3d at 346–47 ("[The plaintiff] only offers as evidence various printouts from websites—primarily SEC filings related to all the [defendant] entities, which are collectively referred to in these documents as 'The Company.' While such documents might arguably establish the existence of some corporate relationship between [the] entities, they are insufficient to overcome the presumption of corporate separateness.").

Plaintiff has not requested jurisdictional discovery,[83] and absent such a request, the Court will not establish on plaintiff's behalf her burden of demonstrating that jurisdictional discovery is necessary or would uncover facts sufficient to support exercise of personal jurisdiction over CSWR. *See Monkton Ins. Servs., Ltd. v. Ritter*,

---

[83] *See generally id.*

768 F.3d 429, 434 (5th Cir. 2014) (stating that the party requesting jurisdictional discovery "bear[s] the burden of demonstrating the necessity of discovery"); *see also Pace v. Cirrus Design Corp.*, 93 F.4th 879, 902 (5th Cir. 2024) (stating that a plaintiff must support her request for jurisdictional discovery with "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts"). Plaintiff has also not established that this Court should, in its discretion, allow her to conduct jurisdictional discovery. *See Freudensprung*, 379 F.3d at 347 ("Matters relating to discovery are committed to the discretion of the trial court, and we therefore review a district court's decision to deny a discovery request for abuse of discretion."); *Getagadget, L.L.C. v. Jet Creations Inc.*, No. 19-51019, 2022 WL 964204 (5th Cir. Mar. 30, 2022) ("It is not an abuse of discretion for a district court to deny jurisdictional discovery when the plaintiff does not identify how the discovery would show that the defendant has sufficient minimum contacts with the forum state." (alterations and quotations omitted)); *see also Croom*, 2024 WL 4542503, at *6 (declining to permit jurisdictional discovery where the plaintiff's evidence and allegations supported only two of the *Hargrave* factors). Consequently, CSWR's motion to dismiss for lack of personal jurisdiction is granted.

### c. *Failure to state a claim*

Because this Court has already dismissed plaintiff's SDWA claims for a lack of subject matter jurisdiction, the Court will not reach the merits of plaintiff's SDWA

27

claim.[84]  The Court will address the remainder of plaintiff's claims that the Magnolia Water defendants seek to dismiss in turn.[85]

### 1.      Procedural Due Process

"A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023). With respect to the first element, procedural due process claims require a plaintiff to "show that any deprivation of their rights was caused by "conduct that may be fairly characterized as 'state action.'" *Divine v. Securix, LLC*, No. 23-196, 2024 WL 4245421, at *7 (S.D. Miss. Sept. 19, 2024); *see also Lindke v. Freed*, 601 U.S. 187, 194 (2024) (stating that § 1983, like the Fourteenth Amendment, "protects against acts attributable to a State, not those of a private person"); *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) ("Embedded in our Fourteenth Amendment jurisprudence is a dichotomy between state action, which is subject to scrutiny under the Amendment's Due Process Clause, and private conduct, against which the Amendment affords no shield, no matter how unfair that conduct may be.").

Magnolia Water defendants argue that, as private entities, plaintiff's procedural due process claim does not apply to them.[86] It also notes that plaintiff's due process clam does not allege that the Magnolia Water defendants "engaged in

---

[84] *See supra* Part III(a)(1).
[85] *See generally* R. Doc. No. 32.
[86] *See* R. Doc. No. 32-1, at 8.

any state action."[87] In fact, Magnolia Water defendants aver that plaintiff's due process claim seems to solely relate to LPSC's "actions in regulatory proceedings."[88]

Plaintiff in response insists that her due process claims are against the Magnolia Water defendants and are proper because she is alleging "joint action between Magnolia and state regulators."[89]

"A private entity can qualify as a state actor in a few limited circumstances." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 443 (5th Cir.), *cert. denied*, 146 S. Ct. 329 (2025) (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019)). One such circumstance includes "when the government acts jointly with the private entity." *See id.* "Joint action requires 'an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents.'" *Id.* (quoting *Hernandez v. Causey*, 124 F.4th 325, 337 (5th Cir. 2024)).

"Deciding whether a deprivation of a protected right is fairly attributable to the State 'begins by identifying the specific conduct of which the plaintiff complains.'" *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999)). "That is because a defendant 'may be a state actor for some purposes but not for others.'" *Pearson*, 133 F.4th at 444 (quoting *Cornish*, 402 F.3d at 550)).

---

[87] *Id.*

[88] *Id.*

[89] R. Doc. No. 37, at 6.

Plaintiff's procedural due process claim alleges that she "was denied meaningful participation in regulatory proceedings, including exclusion of evidence and closure of the docket without proper notice."[90] The count does not identify the defendant, or defendants, against whom the claim is brought.[91] Within the "procedural due process violations" subsection of the complaint's statement of facts, plaintiff alleges that she: "was denied a meaningful opportunity to participate in LPSC proceedings;" that "[e]vidence [she] submitted was not entered into the record;" "[t]he [administrative law judge] refused to allow [p]laintiff to speak, correct the record, or address missing discovery;" and "[t]he docket was closed immediately after [p]laintiff submitted supplemental evidence."[92]

None of plaintiff's allegations specify *any* conduct by the Magnolia Water defendants, much less a "conspiracy" between the Magnolia Water defendants and LPSC to deprive plaintiff of her procedural due process rights in LPSC proceedings. *Cf. Pearson*, 133 F.4th at 444. It is difficult to see how she could allege that the due process violations are attributable to the Magnolia Water defendants; it appears LPSC controls participation in the proceedings before it.[93] Because plaintiff fails to

---

[90] *See* R. Doc. No. 1 ¶ 52.

[91] *See id.* ¶¶ 51–54.

[92] *Id.* ¶¶ 35–38.

[93] *See, e.g.*, R. Doc. No. 29-5 (letter from LPSC Executive Secretary rejecting plaintiff's filings); *see also* LPSC Rules of Practices and Procedures Rule 3 ("All initial filings to be instituted before the Louisiana Public Service Commission, except those instituted by the Commission itself, shall be filed with the Secretary.") and Rule 14 ("Upon the filing of any pleading with the Secretary, he shall forthwith examine the same and determine its sufficiency under these Rules. If he finds that it does not comply in all material respects with these Rules, he may return it to the person who filed it, along with his statement of the reasons for rejecting same.").

allege conduct by the Magnolia Water defendants that constitutes "state action" which deprived her of her procedural due process rights, her procedural due process allegations fail to state a claim against Magolia. *Cf. id.* Plaintiff's due process claim is dismissed.

## 2.    Arbitrary and Capricious Agency Action

Pursuant to Louisiana's Administrative Procedure Act (the "Louisiana APA"),[94] § 49:978.1, "a party who is aggrieved by a final decision or order in an adjudication proceeding is entitled to judicial review."[95] The reviewing court "may reverse or modify the [agency] decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . [a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion[.]" § 49:978.1(G)(5).

Plaintiff asks this Court to reverse the "rate increases and injunctive orders" of LPSC, because LPSC allegedly "acted arbitrarily and capriciously by approving rate increases without a complete financial record and ignoring public health

---

[94] The Court understands plaintiff to allege a Louisiana APA claim, rather than a federal APA claim. *See* R. Doc. No. 1 ¶ 1 (asserting federal jurisdiction solely through the "Safe Drinking Water Act and the United States Constitution"). Even were the Court to construe this count as a federal APA claim, the federal APA "by its own terms . . . does not apply to state agencies." *Roberson v. Rowlett TX Police Dep't*, No. 20-3578, 2020 WL 13857070, at *2 (N.D. Tex. Dec. 10, 2020), *report and recommendation adopted sub nom. Roberson v. Rowlett Texas Police Dep't*, No. 20-3578, 2021 WL 141181 (N.D. Tex. Jan. 11, 2021).

[95] It appears this judicial review is meant to be conducted by parish district court. *See* La. Stat. § 49:978.1(B) ("Proceedings for review may be instituted by filing a petition in the district court *of the parish in which the agency is located* within thirty days after the transmittal of notice of the final decision by the agency or, if a rehearing is requested, within thirty days after the decision thereon." (emphasis added)).

concerns."[96] It appears that this claim is directed solely at LPSC.[97] Because this Court has already dismissed plaintiff's claims against LPSC for lack of subject matter jurisdiction,[98] plaintiff's "arbitrary and capricious agency action" claim against LPSC is therefore dismissed.

To the extent that plaintiff is attempting to bring a claim against the Magnolia Water defendants, such claim fails because, among other reasons, the Magnolia Water defendants are not "agencies" within the meaning of Louisiana's Administrative Procedure Act.[99] Accordingly, this claim is dismissed.

### 3. "Failure to Protect Public Health and Safety"

Plaintiff's sixth count alleges that "[d]efendants failed to protect public health by allowing unsafe water conditions to persist and failing to enforce regulatory standards."[100] She does not identify the federal or state source of this cause of action.[101]

---

[96] *See* R. Doc. No. 1 ¶ 48 ("The *Louisiana Public Service Commission* acted arbitrarily and capriciously by approving rate increases without a complete financial record and ignoring pubic health concerns." (emphasis added)).

[97] *See id.* (mentioning only LPSC).

[98] *See* R. Doc. No. 51.

[99] Louisiana Revised Statute 40:951(3) defines "agency" as "each state board, commission, department, agency, officer, or other entity which makes rules, regulations, or policy, or formulates, or issues decisions or orders pursuant to, or as directed by, or in implementation of the constitution or laws of the United States or the constitution and statutes of Louisiana, except the legislature or any branch, committee, or officer thereof, any political subdivision, as defined in Article VI, Section 44 of the Constitution of Louisiana, and any board, commission, department, agency, officer, or other entity thereof, and the courts."

[100] R. Doc. No. 1 ¶ 61.

[101] *See id.* ¶¶ 60–63.

Indeed, the Magnolia Water defendants raise in their motion to dismiss that it is "unclear what the underlying theory of liability is for this specific claim, as [p]laintiff failed to cite any statute or actionable legal theory."[102] Counsel for Magnolia also represents that "extensive legal research" was conducted by Magnolia, "but [it] has uncovered no standalone state or federal cause of action for failure to protect public health and safety."[103] Magnolia contends that dismissal for failure to state a claim is therefore warranted.[104]

Plaintiff does not address Magnolia's arguments or identify a cause of action in her response.[105] She merely reiterates that she "alleges . . . failure to protect public health."[106] This is insufficient to state a claim. *See* Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, this claim is dismissed.

### 4. Louisiana Title 51 Public Health Sanitary Code & Violations of Louisiana Revised Statute § 40:4(A)(8)(a)

Count II of plaintiff's complaint alleges that defendants violated Title 51 of Louisiana's Sanitary Code "by operating water systems without required sanitary surveys and failing to maintain safe water quality."[107] Count VIII alleges that Louisiana Revised Statute 40:4(A)(8)(a) "requires LDH to ensure that public water

---

[102] R. Doc. No. 32-1, at 8.

[103] *Id.* (internal quotations omitted).

[104] *Id.* at 9.

[105] *See generally* R. Doc. No. 37.

[106] *Id.* at 6. To the extent that this claim is meant to allege a violation of § 40:4(A)(8)(a), the Court finds *infra* Part III(c)(4) that plaintiff has abandoned her claim.

[107] *See* R. Doc. No. 1 ¶¶ 43–46.

systems are operated, maintained, and monitored in a manner that protects public health and prevents the distribution of unsafe water."[108] She also alleges under this count that "Magnolia/CSWR operated unsafe systems, failed to prevent contamination, and reconnected residents to an abandoned and unsurveyed well system" and that "LDH and OPH failed to enforce their statutory duties[.]"[109]

Magnolia moved to dismiss these counts, arguing that plaintiff "lacks statutory standing" to bring these claims pursuant to Louisiana law.[110] Plaintiff did not respond to these arguments or otherwise defend these claims in her response.[111] The Court finds that plaintiff has abandoned these claims. *See McClelland*, 63 F.4th at 1010. Accordingly, these claims are dismissed.

### 5.    Unjust Enrichment

Louisiana Civil Code article 2298 states that "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person." Article 2298 further explains that an unjust enrichment remedy "is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." "The unjust enrichment remedy is only applicable to fill a gap in the law where no express remedy is provided." *Walters v. MedSouth Rec. Mgmt., LLC*, No. 2010-0351, 38 So. 3d 245, 246 (La. 2010). Put simply, "[u]nder Louisiana law, when a legal cause of action exists, unjust enrichment does not." *Orinoco Nat. Res., Inc. v. Mod. Am. Recycling Serv., Inc.*, No. 19-865, 2019 WL

---

[108] *Id.* ¶ 69.
[109] *Id.* ¶¶ 70–71.
[110] R. Doc. No. 32-1, at 9.
[111] *See generally* R. Doc. No. 37.

6036712, at *6 (E.D. La. Nov. 14, 2019) (Vance, J.). The Louisiana Supreme Court in *Walters* held, for example, that a "plaintiff is precluded from seeking to recover under unjust enrichment" where he has pleaded "negligent and tortious conduct." *Walters*, 38 So. 3d at 246.

Moreover, "[t]he mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment." *Perez v. Util. Constructors, Inc.*, No. 15-4675, 2016 WL 5930877, at *1 (E.D. La. Oct. 12, 2016) (Africk, J.). "[T]he important question is whether another remedy is available, not whether the party seeking a remedy will be successful." *Orinoco*, 2019 WL 6036712, at *6 (quoting *Ferrara Fire Apparatus, Inc. v. JLG Indus.*, Inc., 581 F. App'x 440, 443–44 (5th Cir. 2014)). These principles hold true even in light of the fact that Federal Rules of Civil Procedure allow a party to plead in the alternative. *See Perez*, 2016 WL 5930877, at *1 (acknowledging that Rule 8(d) allows alternative pleading, but recognizing that "[t]he question is whether Louisiana law bars [the plaintiff] from asserting an unjust enrichment claim," notwithstanding Rule 8(d)).

The Magnolia Water defendants do not seek dismissal of plaintiff's negligence and gross negligence claims and, therefore, contend that plaintiff has another available remedy.[112] *Cf. Orinoco*, 2019 WL 6036712, at *6 (noting that the plaintiff's cause of action "survive[d] th[e] motion to dismiss" in part because the defendant did not move to dismiss those claims). As such, Magnolia argues that plaintiff's unjust

---

[112] R. Doc. No. 32-1, at 10.

enrichment claim should be dismissed.[113] Plaintiff's only response is that she has pleaded her unjust enrichment claims in the alternative, pursuant to Rule 8(d).[114] Considering the existence of plaintiff's other tort claim, which survives dismissal, and Louisiana law, the Court dismisses plaintiff's unjust enrichment claim.

### IV. Decline Supplemental Jurisdiction, 28 U.S.C. § 1367(c)

For the foregoing, articulated reasons, this Court has dismissed plaintiff's constitutional and SDWA claims against the moving defendants,[115] which formed the basis of this Court's federal question jurisdiction and supplemental jurisdiction over plaintiff's claims.[116] The only count of plaintiff's complaint that survives against the Magnolia Water defendants after the Court's rulings herein is her state law claim for negligence and gross negligence.[117]  This claim does not confer original jurisdiction on this Court.[118]

Defendants Josiah Cox and LDH have not yet been served and, as expected, have not moved to dismiss any claims that plaintiff has alleged against them. It is difficult to decipher which claims pertain to Cox and LDH, yet, for the same reasons articulated *supra* Part III(a), the Court would lack jurisdiction over any SDWA claims against them. *See Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021) (holding that

---

[113] *See id.*

[114] *See* R. Doc. No. 37, at 6.

[115] *See supra* Part III(a)(1), (2), and Part III(c)(1).

[116] R. Doc. No. 1 ¶¶ 1–2.

[117] *Id.* ¶¶ 55–59.

[118] "Diversity jurisdiction" pursuant to § 1332, "requires complete diversity—if any plaintiff is a citizen of the same State as any defendant, then diversity jurisdiction does not exist." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016). Plaintiff and Magnolia are not completely diverse. *See* R. Doc. No. 1 ¶ 4; R. Doc. No. 35-4, at 2.

the district court could *sua sponte* dismiss claims for lack of jurisdiction). Therefore the only possible remaining federal claim against Cox and LDH would be plaintiff's claim for alleged violations of due process,[119] which the Court notes are doubtful to succeed for the same reasons articulated *supra* Part III(c)(1).

Pursuant to § 1367(c), "district courts may decline to exercise supplemental jurisdiction over a claim . . . if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

In addition, when determining whether to exercise supplemental jurisdiction courts should consider "the common-law factors of judicial economy, convenience, fairness, and comity." *Manyweather v. Woodlawn Manor, Inc.*, 40 F.4th 237, 246 (5th Cir. 2022). "If the federal claim is deleted early on in the case, judicial economy almost always favors remand." *Marshall v. MarOpCo, Inc.*, 223 F. Supp. 3d 562, 572 (N.D. Tex. 2017).

With respect to 28 U.S.C. § 1367(c)(2), "[a] federal court will find substantial predominance when it appears that 'a state claim constitutes the real body of a case, to which the federal claim is only an appendage.'" *United Disaster Response, L.L.C. v. Omni Pinnacle, L.L.C.*, 569 F. Supp. 2d 658, 667 (E.D. La. 2008) (Lemelle, J.) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 727 (1966)). "[I]f it

---

[119] *See* R. Doc. No. 1 ¶¶ 51–54.

appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Gibbs*, 383 U.S. at 726–27.

With no SDWA claim remaining, the body of this case pertains to whether defendants were negligent or grossly negligent and violated state law when providing and regulating plaintiff's water utilities, resulting in her inability to access clean water.[120] Her allegations relating to violations of due process, namely, that she was denied "meaningful opportunity to participate in LPSC proceedings,"[121] is only an appendage. The proof supporting plaintiff's due process claim, which will involve discovery into the notice and opportunity to participate in LPSC proceedings given to plaintiff, will not substantially overlap with the evidence necessary to prove her negligence and other state claims regarding water quality. Additionally, it appears plaintiff seeks only declaratory and injunctive relief with respect to her due process claims,[122] whereas, she seeks over $ 1 billion relating to her state claims.[123] The Court finds that plaintiff's remaining state claims substantially predominate over her sole federal claim. *See Marshall*, 223 F. Supp. 3d at 574 (holding that "the number of claims" can "favor[] remand").

---

[120] *See generally* R. Doc. No. 1.
[121] *Id.* ¶ 35.
[122] *Id.* at 6; R. Doc. No. 29, at 4.
[123] *See* R. Doc. No. 1, at 6.

Judicial economy also weighs against exercising jurisdiction. This matter is at the pleading stage, no discovery has been conducted, and "[a]ny trial is a distant possibility." *Manyweather*, 40 F.4th at 246 (finding no abuse of discretion in the district court's decision to remand where "[t]he district court remanded during the pleading stage;" "[n]o discovery had taken place;" and "[a]ny trial was a distant possibility—months, if not years away—if it would happen at all"). To be sure, this matter has only been pending before this Court for a few months, and a trial date has not yet been set. The Court finds that "hardly any federal judicial resources, let alone a significant amount of resources, have been devoted" to this Court's "consideration of these claims." *Harmon v. Fat Cat Boatworks, LLC*, No. 22-74, 2023 WL 6370240, at *4 (S.D. Tex. Mar. 31, 2023). Judicial economy favors remand. *Cf. Don't Dismyabilities, Inc. v. City of Dallas*, No. 17-3026, 2017 WL 5626330, at *3 (N.D. Tex. Nov. 21, 2017) (declining to exercise supplemental jurisdiction and dismissing the plaintiff's remaining claims without prejudice because the action was "in its early stages of litigation" and the district court could "think of no legal harm or prejudice to [the plaintiff] if the state law claims are handled by a state court").

Accordingly, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims. The Court dismisses plaintiff's state claims without prejudice. The Magnolia Water defendants' motion to stay plaintiff's remaining

negligence claim "pending the [LPSC's] adjudication of Plaintiff's other claims,"[124] is denied as moot.

## V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that CSWR's motion[125] to dismiss for lack of personal jurisdiction is **GRANTED**. Plaintiff's claims against CSWR are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the Magnolia Water defendants' motion[126] to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), and failure to state a claim, pursuant to Rule 12(b)(6), is **GRANTED IN PART AND DENIED IN PART**, consistent with the Court's rulings herein.

**IT IS FURTHER ORDERED** that the Magnolia Water defendants' motion[127] for a stay plaintiff's negligence claim is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's SDWA and state law claims against unserved defendants Josiah Cox and Louisiana Department of Health are **DISMISSED WITHOUT PREJUDICE**.

---

[124] *See* R. Doc. No. 32-1, at 10–12. Magnolia Water defendants appear to be referring to the claims related to "rates and services" which they contend "are subject to the exclusive jurisdiction of" LPSC. *See id.* at 11. As this Court has already discussed *supra* Part III(a)(2), plaintiff seems to have abandoned any claim related to rate-setting. Additionally, the Court has already rejected the Magnolia Water defendants' contention that this Court's jurisdiction is limited by state law conferring exclusive jurisdiction on LPSC, *see supra* n.38.

[125] R. Doc. No. 22.

[126] R. Doc. No. 32.

[127] R. Doc. No. 32.

New Orleans, Louisiana, June 8, 2026.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**